UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| PATRICK GAFFNEY,<br>    Plaintiff,<br><br>v.<br><br>PLAY MORE, INC. d/b/a PLAY MORE<br>MUSIC, D'RYAN GREEN, LEITZ MUSIC<br>COMPANY, INC. d/b/a LEITZ MUSIC,<br>LEITZ MUSIC, LLC, PHILIP LEITZ,<br>REEL MUSIC & SOUND, INC.,<br>CHRISTOPHER L. LEITZ, and<br>CHARLES C. COOLEY,<br>    Defendants. | File No. 1:08-CV-18 |

## OPINION AND ORDER

I. Background

    A.    Parties

On January 25, 2008, plaintiff Patrick Gaffney ("Gaffney") brought this action against Jacob M. Wand and Play Hard, Inc. ("Wand" and "Play Hard"). Plaintiff sought damages resulting from Wand and Play Hard's failure to pay a portion of the purchase price of a 1959 Les Paul vintage guitar. Gaffney claimed Wand and Play Hard owed him $100,000.

On February 8, 2008, plaintiff filed an Amended Complaint (Paper 11), naming as party defendants Jacob M. Wand, Play Hard, Inc. d/b/a Play Hard Music & Sound d/b/a Play Hard Enterprises d/b/a Play Hard Music Co. and Play Hard, LLC. On the same date this Court issued a Preliminary Injunction Order which included a prohibition against selling any vintage guitars. (Paper 15.) The Order included "Play More Music store in Louisiana," which plaintiff claimed to be part of Play Hard, Inc. (See Plaintiff's

Emergency Motion for Temporary Restraining Order Ex Parte and for Injunctive Relief (Paper 2).)

On February 15, 2008, plaintiff filed a Second Amended Complaint (Paper 21) ("Complaint") adding the following defendants:

1. Play More Inc. d/b/a Play More Music, a Louisiana corporation;

2. D'Ryan Green, a Louisiana resident;

3. Leitz Music Company, Inc. and Reel Music & Sound, Inc., both Florida corporations; and

4. Philip Leitz, Honey W. Leitz, Julie L. Leitz, Christopher L. Leitz, and Charles C. Cooley, all Florida residents, alleged as owners or officers of the two Florida corporations.

On March 11, 2008, plaintiff dismissed two Florida defendants, Honey W. Leitz and Julie L. Leitz. (Paper 46.) Play Hard, LLC was dismissed on November 4, 2008. (Paper 70.)

On April 25, 2008, default judgment was entered against Play Hard, Inc. and Jacob Wand in the amount of $133,788.35. (Paper 54.)

The following defendants remain in the case:

1. Play More, Inc. d/b/a Play More Music; and D'Ryan Green, Louisiana parties;

2. Leitz Music Company, Inc. d/b/a Leitz Music; Leitz Music LLC; and Philip Leitz, Florida parties; and

3. Reel Music & Sound Inc.; Christopher L. Leitz; and Charles C. Cooley, also Florida parties.

B.  <u>Orders to Show Cause</u>

On February 21, 2008, the Court ordered the plaintiff to file a legal memorandum explaining: (1) his theory of the Court's personal jurisdiction over the defendants who were added in the Second Amended Complaint; (2) what irreparable harm exists considering a monetary award in the amount due for the guitar will provide plaintiff with adequate compensation; and (3) what efforts have been taken to pursue relief in Florida. (Paper 29.)

On June 26, 2008, the Court ordered plaintiff to show cause by July 3, 2008 why the case should not be dismissed without prejudice in view of the default judgment entered against Wand and Play Hard and the fact there had been no activity. Counsel was ordered to file the outstanding legal memorandum by July 7, 2008 with an additional explanation of anticipated steps to be taken to litigate the case. (Paper 56.) Plaintiff filed a "Statement of Cause" July 3, 2008. (Paper 57.)

On July 8, 2008, the Court issued an order stating it continues to doubt jurisdiction over the additional defendants and ordering plaintiff to respond to the June 26, 2008 Order by August 5, 2008 or the case will be dismissed without prejudice. (Paper 58.) Plaintiff's response was filed that day. (Paper 59.)

On February 10, 2009, defendant D'Ryan Green ("Green") filed a letter (Paper 74) which the Court considers a pro se appearance and answer to the Second Amended Complaint.

On February 23, 2009, the Court issued an Order stating it continues to question whether it has jurisdiction over any defendants other than Jacob M. Wand and Play Hard, Inc., and ordering the parties to submit memoranda by March 6, 2009 explaining

why the pending motions should not be dismissed without prejudice and further, whether the Court has jurisdiction over the remaining defendants. (Paper 78.) Plaintiff's Memorandum was filed March 6, 2009. (Paper 79.)

    C.    <u>Pending Motions</u>

    1.    On February 20, 2008, plaintiff filed a Motion for Contempt and Legal Fees (Paper 22), alleging that on December 6, 2008 (sic) Play Hard and Wand sold to Reel Music & Sound, and its officers and directors Christopher Leitz and Charles Cooley, the Play Hard Music & Sound business in Pensacola, Florida. The motion requests (1) an order finding Wand and Play Hard in contempt of the January 25, 2008 Temporary Restraining Order; and (2) $11,102.50 legal fees and expenses.

    2.    On February 20, 2008, plaintiff also filed an Emergency Motion for Temporary Restraining Order Ex Parte and for Injunctive Relief (Paper 23), seeking to enjoin the Florida and Louisiana corporations and individuals from selling and trading guitars (including the Les Paul), drum sets and other musical instruments from the Florida and Louisiana locations or websites.

    3.    On April 6, 2009, defendants Leitz Music Company, Inc., Leitz Music, LLC, Philip Leitz, Reel Music & Sound, Inc., Christopher L. Leitz, and Charles Cooley ("Leitz Defendants") filed a Motion to Dismiss (Paper 89), claiming lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff responded on April 16, 2009. (Paper 92.)

II.   Discussion

   A.   Rule 12(b)(2) – Lack of Personal Jurisdiction

Plaintiff has the burden of presenting to the Court sufficient allegations that it has jurisdiction over a defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996); Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Corp., 921 F. Supp. 1206, 1209 (D. Vt. 1996). The plaintiff "need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." Ben & Jerry's, 921 F. Supp. at 1209 (citation omitted).

In a diversity action such as this, personal jurisdiction over individuals or corporations "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." Metro. Life, 84 F.3d at 567 (internal quotation and citation omitted).

Ordinarily, a two-part analysis takes place involving a state's long-arm statute and its interaction with the due process clause. The Vermont Supreme Court has held that a Vermont court may exercise jurisdiction over a defendant "to the full extent permitted by the Due Process Clause." N. Aircraft, Inc. v. Reed, 572 A.2d 1382, 1385 (Vt. 1990). "Thus, the Court can proceed to an application of the due process clause." Ben & Jerry's, 921 F. Supp. at 1209.

      1.   Minimum Contacts

Under the due process analysis, the Court makes a "minimum contacts" and a "reasonableness" inquiry. Metro. Life, 84 F. 3d at 567. In deciding the sufficiency of a defendant's contacts with the forum state, the key principle is "there be some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hansen v. Denckla, 357 U.S. 235, 253 (1958). "The case law is clear that where . . . a defendant does not actively initiate contacts in a state, a court does not ordinarily exercise jurisdiction over that defendant, unless there is some other evidence of minimum contacts with the forum state." Artec Distrib., Inc. v. Video Playback, Inc., 799 F. Supp. 1558, 1560 (D. Vt. 1992).

Whether there is "general" or "specific" personal jurisdiction is the first inquiry under the minimum contacts analysis. Metro. Life, 84 F. 3d at 567. If contacts with the state "do not exist in sufficient abundance, that is, if the constitutionally necessary first-tier minimum is lacking, the inquiry ends." Id. at 568.

### 2. Specific Jurisdiction

> Two factors must be present for a court to have specific jurisdiction over an out of state defendant. First, to meet the Due Process "fair warning" requirement, the defendant must have "purposefully directed" its activities at the forum. [] Second, the litigation must "arise out of or relate to" at least one of those activities. []
>
> The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. [] Rather, a defendant "avail[s] itself of the privilege of conducting business [in the forum]" when it "deliberately" engages in significant activities in a state. [] The defendant need not be physically present in the forum "so long as [its] efforts are purposefully directed toward the residents of another State."

Dearwater v. Bond Mfg. Co., No. 1:06-cv-154, 2007 WL 2745321, at *4 (D. Vt. Sept. 19, 2007) (internal citations omitted).

### 3. General Jurisdiction

> General jurisdiction exists when a defendant "maintain[s] continuous and system[at]ic" contacts with the forum. [] General jurisdiction is based on a defendant's "general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." [] Courts must impose the more stringent "continuous and system[at]ic" minimum contacts test because general jurisdiction is not related to the events giving rise to the suit.

Dearwater, 2007 WL 2745321, at *5 (internal citations omitted).

### 4. Facts

Plaintiff is a resident of Putney, Vermont. Defendant Wand is a resident of Nevada, Texas, and/or Florida, although plaintiff's interactions with Wand since the commencement of this lawsuit have taken place in Florida. Gaffney first met Wand at a guitar show in Texas. They entered into a contract for the purchase of the vintage guitar. (Compl. ¶ 19.) The total selling price was $370,000, id., of which $270,000 subsequently was paid to Gaffney. Id. ¶¶ 20, 23. Wand took possession of the guitar the day of the show, but failed to pay the balance of $100,000. Id. ¶¶ 21, 24.

Plaintiff alleges the Leitz Defendants, Green, and Play More, Inc. d/b/a Play More Music are also liable to him for "breach of contract," "unjust enrichment," and "equitable relief" because of events which took place in Pensacola, Florida, at or near the granting of this Court's Amended Temporary Restraining Order of February 6, 2008 (Paper 10). See Compl. ¶¶ 33-41, 46, 61.

Gaffney's theory for adding the Leitz Defendants, Green, and Play More, Inc. rests principally on a telephone call from him to Christopher Leitz in Panama City, Florida during which they discussed Leitz's Florida business. See Compl. ¶¶ 35-38. Any claims against Green and Play More, Inc. arise out of actions taking place in Florida

7

and Louisiana and are entirely based "upon information and belief."  (Compl. ¶¶ 41, 46, 61.)

There are no factual allegations in plaintiff's Complaint that Gaffney had any contact with Green, although Green's pro se response indicates he accompanied Wand to Vermont on one occasion prior to the sale of the guitar.  (Paper 74.)

Plaintiff has produced no facts that the Leitz Defendants have been in Vermont, have any business or personal operations in the state, own property or have entered into any contracts with Vermont residents.  Except for the one visit to the state, Gaffney cannot show Green has any connection to Vermont.

Plaintiff has utterly failed to bring to the Court any facts involving the Leitz Defendants, Green, or Play More, Inc. that would permit it to exercise either specific or general jurisdiction.  A lone telephone call apparently from Vermont to a person in Florida about events occurring in Florida does not even remotely show that the Leitz Defendants, Green, or Play More, Inc. "actively initiate[d] contacts in [the forum] state," Artec Distrib., 799 F. Supp. at 1560, much less "maintain[ed] continuous and system[at]ic" contacts with the forum.  Dearwater, 2007 WL 2745321, at *5.

This Court has no authority to exercise its jurisdiction over the Leitz Defendants, Green, or Play More, Inc.  Therefore, the Motion to Dismiss the Leitz Defendants (Paper 89) is GRANTED.

Although D'Ryan Green has not filed a formal motion to dismiss, the Court construes his pro se letter to the Court to state sufficient facts to overcome any claims plaintiff may have to allow the Court to exercise jurisdiction over Green or Play More,

8

Inc., a Louisiana corporation with which he is associated. See Exs. 3, 4 of Pl.'s Mem. (Doc. 79). Therefore, D'Ryan Green and Play More, Inc. are DISMISSED.

Since the claims against all defendants except Jacob Wand and Play Hard, Inc. have been dismissed, plaintiff's Emergency Motion for Temporary Restraining Order Ex Parte and for a Preliminary Injunction (Paper 23) is DENIED as moot.

Plaintiff's Motion for Contempt and Legal Fees (Paper 22) was filed on February 20, 2008, prior to his obtaining a default judgment against Jacob Wand and Play Hard, Inc. on April 24, 2008. The judgment includes attorney's fees. Considering the passage of time from the filing of the motion and the lack of activity, the Court exercises its discretion and DENIES plaintiff's motion.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of July, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge